# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| M. PETER KUCK, individually, | : | |
| and on behalf of others similarly situated, | : | |
| | : | |
| Plaintiffs, | : | CASE NO. |
| | : | |
| v. | : | **COMPLAINT** |
| | : | |
| JOHN A. DANAHER, III, COMMISSIONER, | : | |
| CONNECTICUT DEPARTMENT OF PUBLIC | : | |
| SAFETY, in his official and individual capacities, | : | |
| ALBERT J. MASEK, JR., COMMANDING | : | |
| OFFICER, CONNECTICUT DEPARTMENT OF | : | |
| PUBLIC SAFETY, in his official and individual | : | |
| capacities, | : | **TRIAL BY JURY DEMANDED** |
| | : | |
| Defendants. | : | SEPTEMBER 17, 2007 |

## PRELIMINARY STATEMENT

1.     This action arises from a course of intentional conduct by the Defendants to abuse the authority granted the Connecticut State Department of Public Safety under state law to issue, renew, and revoke pistol permits.

2.     The Defendants' unlawful conduct, in violation of the procedural and substantive due process rights of the Plaintiff and those similarly situated, has caused the denial of pistol permits to suitable citizens having a clear entitlement under state law to a pistol permit.

3.     The Defendants have acted to delay and deny Plaintiff and those similarly situated a meaningful opportunity to be heard on the denial of pistol permits before the Connecticut State Board of Firearms Permit Examiners ("Board").

4.     The Defendants' unlawful abuse of their statutory authority and intentional delay in preparing and submitting the DPS pistol permit denial cases to the Board for review have created a *de facto* pistol permit suspension period not contemplated under the law but used by the

DPS as a procedural mechanism to punish citizens for transgressing policies that DPS has implemented or supports but which have no basis in the law.

**JURISDICTION**

5.      The District of Connecticut has jurisdiction over the instant Complaint pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), (4), 42 U.S.C. §§ 1983, 1988.

**PARTIES**

6.      Plaintiff M. Peter Kuck ("Plaintiff") is an adult citizen of the United States with a residence in West Hartford, Connecticut.

7.      The Governor appointed Plaintiff to serve on the Board of Firearms Permit Examiners pursuant to Connecticut General Statutes ("General Statutes"), § 29-32b.

8.      The Board hears appeals from persons aggrieved (a) by any refusal to issue or renew a permit or certificate under the provisions of General Statutes §§ 29-28 and 29-36f, or (b) by any limitation or revocation of a permit or certificate issued under any of said sections, or (c) by a refusal or failure of any issuing authority to furnish an application as provided in General Statutes § 29-28a.

9.      Plaintiff serves as the Board's Secretary.

10.     General Statutes § 29-32b(a), which establishes the Board within the DPS for administrative purposes only, mandates that one member of the Board shall be appointed by nomination of Ye Connecticut Gun Guild, Inc.

11.     The stated purposes of Ye Connecticut Gun Guild, Inc. are (a) to establish and maintain in Connecticut a permanent organization for the promotion of friendship among, and for the mutual benefit of, persons interested in the collection, preservation, and use of arms and accessories and (2) to take a united stand in opposing legislation or regulation at any level of

2

government which may be injurious to the collection, preservation, possession, or use of firearms by responsible collectors, shooters, sportsmen, and other firearms owners.

12.     The Governor appointed Plaintiff by nomination of Ye Connecticut Gun Guild, Inc.

13.     Plaintiff brings Count One, in accordance with Rule 23(b)(1), (2), and (3) of the Federal Rules of Civil Procedure, on his behalf and on behalf of all persons who, similar to Plaintiff:

a.     hold or have held a pistol permit issued by the DPS and were required to submit a birth certificate, United States passport, or voter registration card to the DPS for renewal of such pistol permit; or

b.     hold or have held a pistol permit issued by the DPS and were denied renewal of such pistol permit for failure to submit a birth certificate, United States passport, or   voter registration card to the DPS.

14.     Plaintiff brings Count Two, in accordance with Rule 23(b)(1), (2), and (3) of the Federal Rules of Civil Procedure, on his behalf and on behalf of all persons who, similar to Plaintiff:

a.     have been aggrieved by any refusal to issue or renew a permit or certificate under the provisions of General Statutes §§ 29-28 and 29-36f, or by any limitation or revocation of a permit or certificate issued under any of said sections, or by a refusal or failure of any issuing authority to furnish an application as provided in General Statutes § 29-28a; and

b.     filed a timely appeal to the Board in accordance with General Statutes § 29-32b; and

c.      were denied or are being denied a reasonable and timely opportunity to be heard.

15.      Defendant John A. Danaher, III, is the Commissioner of the Connecticut Department of Public Safety ("Commissioner Danaher") and is sued in his official and individual capacities.

16.      The Governor appointed Commissioner Danaher to serve as the chief executive officer of the DPS having general jurisdiction over DPS affairs.

17.      The DPS is comprised of three principal divisions which include (a) the Division of State Police, (b) the Division of Fire, Emergency and Building Services, and (c) the Division of Scientific Services.

18.      The Division of State Police, the Division of Fire, Emergency and Building Services, and the Division of Scientific Services, and several other DPS sections, report directly to Commissioner Danaher.

19.      The Division of State Police has two distinct operational offices which are the Office of Field Operations and the Office of Administrative Services.

20.      The Office of Administrative Services includes the Special License and Firearms Unit (SLFU).

21.      Defendant Albert J. Masek, Jr. ("Capt. Masek") is the Commanding Officer of Special Investigations and Support for the Division of State Police.

22.      Capt. Masek supervises the SLFU and is sued in his official and individual capacities.

23.      Commissioner Danaher and Capt. Masek are sued only in their individual capacities for compensatory and punitive damages but in both their individual capacities and their official capacities for prospective injunctive relief and attorney's fees.

24.     During all times referenced in the Complaint, the Defendants acted under color of law.

## ALLEGATIONS OF FACT

25.     A pistol permit in the state of Connecticut expires five (5) years after the date such permit becomes effective.

26.     On or about March 19, 2007, Plaintiff personally submitted his application to DPS in Middletown, Connecticut, for the renewal of his pistol permit prior to its April 16, 2007, expiration date.

27.     The DPS demanded that Plaintiff submit a birth certificate or United States passport for renewal.

28.     Plaintiff spoke with Sergeant Ronald Bastura ("Sgt. Bastura"), the Executive Officer of the SLFU, about the basis for demanding the submission of a birth certificate or United States passport as a condition for renewing a pistol permit.

29.     Sgt. Bastura told Plaintiff that since September 11, 2001, it was SFLU policy to demand a United States passport or birth certificate as a condition for renewing a pistol permit.

30.     Sgt. Bastura knew on March 19, 2007, when he informed Plaintiff of the SFLU policy conditioning the renewal of a pistol permit upon the submission of a United States passport or birth certificate that the policy violated the law.

31.     In June, 2005, the Board, upon receipt of a letter from YCGG questioning the SFLU's lawful basis for demanding United States passports as a condition for renewal of a pistol permit, requested that DPS clarify the basis for the SFLU policy.

32.     The YCGG informed the Board in its June, 2005, letter that the demand for United States passports was an arbitrary and possibly illegal change in pistol permit renewal

requirements.

33.     The SLFU informed the Board in 2005 that the SFLU had requested United States passports since September 11, 2001, but that no one would be denied renewal if a United States passport was not produced.

34.     On April 17, 2007, Plaintiff requested information from Capt. Masek about the SFLU's denial of Plaintiff's pistol permit renewal.

35.     Capt. Masek responded to Plaintiff that the DPS sent Plaintiff a renewal form and instructions pursuant to General Statutes § 29-30(f) and that Plaintiff had failed to provide the documentation required for renewal.

36.     Capt. Masek instructed Plaintiff by letter dated April 26, 2007:  "Enclosed please find another copy of the instruction sheet, which states the documentation that DPS will accept for establishing one's United States citizenship or legal residency.  For establishing citizenship, we require the submission of a birth certificate, United States passport or voter registration card."

37.     The DPS, acting through its Legal Affairs Section, and Capt. Masek, has failed to provide Plaintiff any basis in law for the DPS demand that Plaintiff provide a birth certificate, United States passport, or voter registration card as a condition for renewal of a pistol permit pursuant to General Statutes § 29-30.

38.     Plaintiff's pistol permit expired on April 16, 2007.

39.     Plaintiff has a clear entitlement to the renewal of his pistol permit.

40.     The DPS has not issued a renewal of Plaintiff's pistol permit.

41.     Plaintiff filed a timely appeal to the Board from the DPS refusal to renew his pistol permit.

42.     The Board, by notice to Plaintiff dated April 20, 2007, scheduled a hearing on

Plaintiff's appeal for November 13, 2008.

43.     In a May 14, 2007, letter to Commissioner Danaher, the Board, through its Chairman, Christopher R. Adams ("Chairman Adams"), expressed concern about the backlog of cases to be heard by the Board.

44.     Chairman Adams cited an audit performed by the Auditors of Public Accounts which found that the backlog had been a concern for at least two years and during this time had increased from an estimated wait time for hearing from fourteen (14) to sixteen (16) months.

45.     Chairman Adams invited Commissioner Danaher to work with the Board to expedite the appeals process.

46.     For fiscal years ending June 30, 2001, and 2002, the auditors determined that the estimated wait time for a hearing before the Board had increased from three (3) months to fourteen (14) months as of January 23, 2003.

47.     For fiscal years ending June 30, 2003, and 2004, the auditors noted that the backlog as of May 30, 2005, was fourteen (14) months.

48.     In May, 2007, the estimated wait time for hearing before the Board was seventeen (17) months.

49.     The DPS caused the backlog of cases by not reviewing, processing and preparing the appeal cases in a reasonable and timely manner for the Board's review.

50.     The DPS caused the backlog in cases by increasing the number of appeals through its denial of pistol permit renewals based upon arbitrary and illegal requirements for renewal.

51.     The backlog of cases and the wait period deny aggrieved persons the right to confront the witnesses against them.

52.     The backlog of cases and the wait period results in the DPS presenting hearsay

testimony based on police reports and statements by witnesses who are no longer available for cross-examination.

53.     The backlog of cases and the estimated wait time is a direct result of the DPS refusal to submit their cases to the Board in a timely manner, or, in some cases, not until the day of the hearing before the Board.

54.     When an appeal is filed by an aggrieved person to the Board, the Board requires that the aggrieved person and the DPS submit responses to questionnaires and state their respective positions.

55.     An aggrieved person provides facts or details supporting the issuance, renewal, or return of his or her pistol permit.

56.     The DPS provides facts or details supporting its determinations regarding the suitability of an aggrieved person for issuance, renewal, or return of his or her pistol permit.

57.     Aggrieved persons appealing to the Board are required to submit their positions and statements to the Board in accordance with the Board's instruction that failure to do so will prevent the Board from reviewing the case and adding the case to the wait list.

58.     The Board is subject to section 29-32b-7 of the Regulations of Connecticut State Agencies which provides that "[a]fter receipt of the appeal the Secretary reserves the right to make a thorough inquiry of the facts of the appeal. When the Secretary determines that the information obtained relative to the appeal is sufficient to permit the conduct of a fair and impartial hearing, he shall set a date for a hearing and give reasonable notice of the time and place of the hearing to the appellant and to the issuing authority."

59.     The DPS delay in submitting its case statements and positions to the Board prevents the Board from timely review and resolution by the Board of meritless, legally

60.     The SFLU, knowing that it denies a percentage of initial and renewal applications for pistol permits and revokes pistol permits, without evidence or basis in law, withholds its case statements and positions from the Board until just prior to the scheduled hearing and then settles cases on the day of hearing because the DPS knows that the cases are without evidence or basis in law.

61.     By the time the DPS settles cases on the day of hearing before the Board, the aggrieved person has been denied the pistol permit without evidence or basis in law for a fourteen (14) to twenty (20) month time period.

62.     Plaintiff's hearing on the denial of his application for the denial of his pistol permit renewal is scheduled for November 13, 2008, seventeen (17) months after the April 16, 2007, expiration of his pistol permit.

63.     The DPS is aware that the Board has no basis in law to uphold the DPS determination to deny Plaintiff the renewal of his pistol permit.

64.     The DPS is not concerned that it has acted unlawfully in denying the renewal of Plaintiff's pistol permit because by the time Plaintiff has an opportunity to be heard before the Board, Plaintiff will have been denied the permit for seventeen (17) months.

65.     Commissioner Danaher did not respond to a May 14, 2007, letter from Chairman Adams requesting cooperation from the DPS in decreasing the backlog of cases scheduled for hearing before the Board.

66.     The auditors recommended in their reports that DPS cooperate with the Board or risk violating individuals' right to a timely hearing.

67.     The DPS deliberately manipulates its authority to deny the issuance or renewal of

pistol permits and to revoke pistol permits by imposing unlawful restrictions upon a citizen's ability to obtain, renew, and hold a permit..

68.     The DPS deliberately withholds information from the Board about its determinations denying the issuance or renewal of pistol permits and revoking pistol permits to prevent the Board from reviewing the cases until fourteen (14) to twenty (20) months have passed.

69.     The DPS manipulation of its authority and its withholding of information from the Board allows the DPS to enforce unlawful policies to keep pistol permits from suitable citizens without timely review.

70.     Plaintiff, in his capacity as a Board member, makes inquiry into and determines the facts, *de novo*, of matters brought before the Board by aggrieved persons.

71.     Plaintiff, in his capacity as a Board member, votes to order pistol permits or certificates to be issued, renewed, or restored, or limitations removed or modified, unless he finds that such refusal, limitation or revocation, was for just and proper cause.

72.     In finding that some refusals, limitations, or revocations of pistol permit applications are not supported by just and proper cause, Plaintiff has been subject to threatening and harassing conduct by members of the SFLU.

73.     A member of the SLFU, Sgt. Bastura, told Plaintiff on or about March 19, 2007, when Plaintiff sought renewal of his pistol permit, that Plaintiff had a problem with the SFLU.

74.     A member of the SLFU, Detective Barbara Mattson ("Det. Mattson"), has stated her opinion to Plaintiff that guns should not be possessed by persons not affiliated with law enforcement.

75.     A member of the SLFU, Detective Thomas Karanda ("Det. Karanda"),

76.     Det. Karanda then asked Plaintiff if he [Plaintiff] had heard about a previous antiques arms show in Hartford and when Plaintiff indicated that he had, Det. Karanda said, "well we went too easy on those guys, and next time we will drag them out in handcuffs."

77.     Det. Karanda concluded the discussion with a threat by stating in a loud voice that he [Det. Karanda] had better not see anyone at the Guild show with price tags on any pistols or he [Det. Karanda], if the individuals did not have a local permit to sell, notwithstanding any posted sign limiting sales to Federal Firearms License holders only, would drag them out in cuffs.

## VIOLATIONS AND CLAIMS

### Count One
### DENIAL OF PROCEDURAL DUE PROCESS
### Fifth and Fourteenth Amendments to the United States Constitution (42 U.S.C. § 1983)

78.     Plaintiff hereby incorporates by reference under Count One each and every paragraph numbered 1 through 77, above.

79.     General Statutes § 29-32b(d) provides that the Board shall hold hearings at such places and times as its discretion reasonably determines.

80.     The DPS, in creating a backlog of cases which requires aggrieved individuals to wait between fourteen (14) and twenty (20) months for a hearing, has denied aggrieved individuals the opportunity to be heard at a meaningful time and in a meaningful manner.

81.     Commissioner Danaher has failed to respond to the Board's efforts to decrease the backlog despite the recommendation of the auditors that the DPS take specific action or risk

denying appellants their right to a hearing.

82.    Capt. Masek has created a backlog of cases by imposing arbitrary requirements for pistol permit renewal that are not authorized under the law.

83.    Plaintiff has suffered damages.

**Count Two**
**DENIAL OF SUBSTANTIVE  DUE PROCESS**
**Fifth and Fourteenth Amendments to the United States Constitution (42 U.S.C. § 1983)**

84.    Plaintiff hereby incorporates by reference under Count Two each and every paragraph numbered 1 through 77.

85.    The SFLU's imposition of barriers to gun possession in contravention of representative legislation is so outrageously arbitrary as to constitute a gross abuse of governmental authority.

86.    The right to appeal to the Board from the SFLU's imposition of arbitrary requirements for pistol permit renewal is rendered meaningless by the unreasonable wait period for such a hearing.

87.    The wait period for a hearing before the Board is created by the SFLU's failure to review, process, and prepare the appeal documentation for Board review.

88.    By creating arbitrary requirements and then creating a delay in the process for appeal from the imposition of the arbitrary requirements, the DPS has substantially infringed upon state law based upon its animus toward gun possession by persons not affiliated with law enforcement.

89.    Plaintiff has suffered damages.

**Count Three**
**FIRST AMENDMENT RETALIATION**
**First and Fourteenth Amendments to the United States Constitution (42 U.S.C. § 1983)**

90.    Plaintiff hereby incorporates by reference under Count Three each and every paragraph numbered 1 through 77.

91.    The Defendants  have violated the Plaintiff's right to freedom of speech under the First Amendment to the United States Constitution as enforced by 42 U.S.C. § 1983.

92.    Plaintiff has an interest as a citizen, pistol permit holder, and an appointed member of the Board in the lawful and timely processing of aggrieved persons' appeals to the Board from decisions of the DPS denying issuance or renewal of pistol permits, or revoking pistol permits that is protected by the First Amendment.

93.    The DPS, acting through Det. Karanda, threatened and harassed Plaintiff based upon Plaintiff's statements that, in substance, the Board is independent and not a mere "rubber stamp" for DPS actions on pistol permits.

94.    The DPS, acting through Det. Karanda, threatened and harassed Plaintiff based upon Plaintiff's statements that, in substance, the DPS evidence and testimony in some cases supporting its decisions to deny issuance or renewal of pistol permits, or to revoke pistol permits, is not credible.

95.    Plaintiff's exercise of his First Amendment rights has been chilled by the DPS threatening and harassing conduct toward him at the November, 2006, Board meeting and the arbitrary denial of his pistol permit renewal.

96.    Plaintiff has suffered damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs claim judgment against the Defendants as follows:

1.  Money damages;

2.  Punitive damages;

3.  Attorney's fees and costs;

4.  Prospective injunctive relief; and

5.   Such other relief in law or equity as the Court may deem appropriate.

Dated this 17th day of September, 2007, at Torrington, Connecticut.


PLAINTIFFS
M. PETER KUCK, individually and on
behalf of others similarly situated


BY:   _____
Rachel M. Baird (ct12131)
Law Office of Rachel M. Baird
Stonegate Professional Building
379 Prospect Street
Torrington CT 06790-5239
Tel:  (860) 626-9991
Fax:  (860) 626-9992
Email:  rbaird@rachelbairdlaw.com