UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| M. PETER KUCK, individually | : | |
| and on behalf of others similarly situated | : | CIVIL ACTION NO. |
| | : | 3:07cv1390 (VLB) |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN A. DANAHER, III, former Commissioner, | : | |
| Connecticut State Department of Public Safety, | : | |
| In his Individual Capacity, | : | |
| JAMES M. THOMAS, Commissioner, | : | |
| Connecticut State Department of Public Safety, | : | |
| In his Official Capacity, | : | |
| M. JODI RELL, Governor, State of Connecticut | : | |
| In her Individual and Official Capacities, | : | |
| ALARIC FOX, Captain, | : | |
| Connecticut State Department of Public Safety, | : | |
| In his Individual Capacity, | : | |
| ALBERT J. MASEK, JR., former Commanding | : | |
| Officer, Connecticut State Department of Public | : | |
| Safety, In his Individual Capacity, | : | |
| BARBARA MATTSON, DETECTIVE, | : | |
| Connecticut State Department of Public Safety | : | |
| In her Individual Capacity, | : | |
| THOMAS KARANDA, Detective, | : | |
| Connecticut State Department of Public Safety, | : | |
| In his Individual Capacity | : | |
| RONALD A. BASTURA, former Sergeant, | : | |
| Connecticut State Department of Public Safety, | : | |
| In his Individual Capacity, | : | |
| SUSAN MAZZOCCOLI, Executive Head, | : | |
| Connecticut State Department of Administrative | : | |
| Services, | : | |
| In her Individual and Official Capacities, | : | |
| CHRISTOPHER R. ADAMS, former Chairman, | : | |
| Connecticut State Board of Firearms Permit | : | |
| Examiners, | : | |
| In his Individual Capacity, | : | |
| | : | |
| *Defendants* | : | DECEMBER 6, 2010 |

<u>MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>

This is a suit by a former member of the State Board of Firearms Permit Examiners who has no patience for the careful administrative process adopted by the Board for ensuring that dangerous weapons are kept out of the hands of felons, illegal aliens, and other whose gun ownership would threaten the safety of Connecticut's citizens.

The above defendants, sued in their official and individual capacities (collectively, the "Defendants"), provide this memorandum in support of their motion to dismiss.   Pursuant to Fed. R. Civ. Pro. 12(b)(1) and 12(b)(6), plaintiff's claims should be dismissed in their entirety because plaintiff lacks standing; because his claims are barred by absolute immunity and qualified immunity; and because he fails to state a claim upon which relief may be granted.

I.      FACTUAL ALLEGATIONS AND LEGAL CLAIMS

    <u>Defendants</u>

A.      <u>The Process for Obtaining Gun Permits and Bringing Administrative Appeals.</u>

The complaint alleges as follows:  At the time of the filing of the complaint, the plaintiff was the Secretary of the state Board of Firearms Permit Examiners (the "Board").  Complaint ¶¶ 6, 7.  The Board is an autonomous agency of the State, within the DPS "for administrative purposes only."  Conn. Gen. Stat. § 29-32b(a).  The Board is comprised of seven members appointed by the Governor, from nominees submitted by a variety of specified organizations and state agencies.  <u>Id</u>.  The members of the Board are not compensated, but are entitled to "reasonable subsistence and travel allowances."  Conn. Gen. Stat. §  29-

32b(g).  The Board hears appeals from the denials to issue or renew gun permits.
Conn. Gen. Stat. § 29-32b(b); Complaint ¶ 8.  The Board is required to hold
hearings not less than "once every ninety days" (i.e., at least four times a year),
and otherwise holds hearings at "such times and places as it in its discretion
reasonably determines to be required."   Conn. Gen. Stat. § 29-32b(d).  The
statute does not specify a time period within which the appeals must be heard.

     The Secretary of the Board is responsible for "all secretarial duties defined
in sections 29-32b-3 through 29-32b-15."  Regs, Conn. State Agencies, § 29-32b-
7.  The Board's Secretary is responsible for petitions for hearing and
acknowledging receipt of all appeals.  Regs, Conn. State Agencies, §§ 29-32b-5,
29-32b-6.  The Board's Secretary also is responsible for "making a thorough
inquiry" into the facts underlying an appeal, and once the gathered information
is sufficient, setting a hearing date and giving notice of the hearing to the
appellant and issuing authority.  Regs, Conn. State Agencies, § 29-32b-7.  The
Secretary of the Board may postpone, recess or reschedule hearings.  Regs,
Conn. State Agencies, § 29-32b-11.

     The Board hears the appeals de novo, in an "informal fashion," but
"otherwise according to the rules of evidence," with a full transcript and
witnesses testifying under oath.  Conn. Gen. Stat. § 29-32b(b), (e).  The Board
may compel attendance of witnesses to its sessions.  Conn. Gen. Stat. § 29-
32b(d).  The Board must grant the appeal unless the Board finds that the refusal
is for "just and proper cause."  Conn. Gen. Stat. § 29-32b(b).  If a person is
aggrieved by a decision of the Board, they may file an administrative appeal to

the superior court pursuant to Conn. Gen. Stat. § 4-183.  Conn. Gen. Stat. §  29-32b(f).

In order to obtain an "eligibility certificate for pistol or revolver," a person must apply to the Commissioner of Public Safety.[1]  Conn. Gen. Stat. §  29-36f.  The Commissioner is required to issue an eligibility certificate unless specific statutory exclusions are present, including if the applicant is "an alien illegally or unlawfully in the United States."  Conn. Gen. Stat. § 29-36f(b)(9).

In order to obtain a permit to carry a pistol or revolver in Connecticut a person must apply to the local authority, such as chief of police, warden or selectman.  Conn. Gen. Stat. § 29-28(b); Conn. Gen. Stat. § 29-28a(a).  The local authority is required to issue a temporary permit unless specific statutory exclusions are present, including if the applicant is "an alien illegally or unlawfully in the United States."  Conn. Gen. Stat. § 29-28(b)(9).  Once a temporary state permit to carry is issued, the application is sent to the Commissioner of Public Safety.  Conn. Gen. Stat. §  29-28(b); Conn. Gen. Stat. § 29-28a(b).  Thus all applications for a permanent state permit to carry a pistol or revolver are sent to, and processed by, the Special Licensing and Firearms Unit ("SLFU") within DPS.

Within sixty (60) days of issuance of the temporary state permit, the applicant must appear at DPS for issuance of the state permit or denial of the application.  Conn. Gen. Stat. § 29-28(b); Conn. Gen. Stat. § 29-28a(b).[2]  The SFLU

---

[1] An eligibility certificate permits a person to purchase a handgun and keep the handgun at home. It does not permit a person to carry a handgun.
[2] If a municipality issued a temporary permit and the Commissioner denies the permit, the temporary permit is immediately revoked.  Conn. Gen. Stat. § 29-28a(b).

is within the Office of Administrative Services within the Department of Public Safety ("DPS").  Complaint ¶ 15-17.  Captain Masek is in charge of the SLFU, and Lieutenant Fox, and Detectives Mattson, Karanda and Bastura all work in the SLFU.  Complaint ¶¶ 19-23.  The SLFU is the unit within DPS responsible for firearm licensing, and all applications for pistol or revolver permits are processed through SLFU.  *See, e.g.*, Conn. Gen. Stat. §§  29-28a(b); 29-29.

The Commissioner is required to notify the local authority of the permit, and retain records of all applications, whether approved or denied.  Conn. Gen. Stat. § 29-28(b).  When an application is denied by the Commissioner (through his designee), the applicant has the right to appeal the denial to the Board. Conn. Gen. Stat. §  29-32b(b).  Thus DPS is a <u>party</u> to the administrative appeal, and is not the agency that adjudicates the appeal.[3]

A "bona fide resident of the United States" who is an out-of-state resident with an out-of-state permit or license to carry a pistol or revolver may apply directly to the Commissioner of Public Safety for a permit to carry a pistol or revolver in the state. Conn. Gen. Stat. § 29-28(f).  Whether to be eligible to own a pistol, to carry a pistol or to credit an out-of-state license to carry a pistol, the state gun licensing statutes all expressly require that an applicant be a "bona fide" resident, and not an illegal alien.  *See* Conn. Gen. Stat. §§ 29-28(f), 29-28(b)(9), 29-36f(b)(9).

State permits to carry a pistol or revolver expire after five years.  Conn. Gen. Stat. § 29-30(c).  Within ninety days before the expiration, the issuing

---

[3] Except in the rare instances where a temporary permit was denied by the municipality, and that denial is appealed directly to the Board, DPS always is the defending party in a denial-of-a-permit administrative appeal to the Board.

authority sends a notice and a renewal form for the permit.  Conn. Gen. Stat. §
29-30(f).  Unless a permit is revoked or has revocation pending, the permit
remains valid for a period of ninety days after the expiration date.  Id.  State
statute mandates that the Commissioner "investigate each applicant for renewal
for a state permit to ensure that such applicant is eligible under state law."
Conn. Gen. Stat. §  29-29(d).

B.      The Plaintiff's Renewal Application and Comments by SLFU Staff.

On March 19, 2007, the plaintiff filed his renewal application for his gun
permit to DPS.  Complaint ¶ 38.  As part of the renewal process, plaintiff was
asked to provide proof of U.S. citizenship or legal residency.  Complaint ¶ 54.
The plaintiff refused to provide the required documentation until immediately
before his hearing, and a renewal of his gun permit was therefore not processed.
Complaint ¶¶ 54, 61.  However, as the Court of Appeals for the Second Circuit
found:  "Shortly before the hearing, he provided a voter registration roll
supporting his citizenship and residency status; as a result, his renewal
application was granted.  Despite this resolution, he continues to seek damages.
. . ."  Id. at 162.

Plaintiff filed a timely appeal to the Board, and was informed, by a notice
dated April 20, 2007, that his appeal hearing would be heard October 9, 2008.
Complaint ¶¶ 60, 62.  The plaintiff notes that an audit performed by the Auditors
of Public Accounts revealed wait times for hearings before the Board from
between fourteen (14) to sixteen (16) months.  Complaint ¶¶ 74-76.  The plaintiff

alleges bad-faith on the part of DPS in its presentation of cases to the Board. Complaint ¶¶ 50, 66, 70, 83-88, 105.[4]

The plaintiff originally filed this action in the District Court on September 17, 2007. As originally filed, the complaint consisted of a procedural due process count, a substantive due process count and a claim of First Amendment retaliation. On July 25, 2008, this Court dismissed the complaint. The plaintiff appealed to the United States Court of Appeals for the Second Circuit which upheld the dismissal of the First Amendment and substantive due process claims in a decision dated March 23, 2010. Kuck v. Danaher, 600 F.3d 159 (2d. Cir. 2010). The Court remanded the case back to the District Court for further proceedings on the procedural due process claims only. Id. On September 3, 2010, the plaintiff filed an amended complaint.

II.     LEGAL CLAIMS

In his Amended Complaint, the plaintiff has sued officials from DPS, the Board and the Governor. From DPS, plaintiff has brought claims against the former Commissioner of Public Safety, John Danaher and current Commissioner James Thomas, the supervisor and detectives assigned to the SLFU, Captain Masek, Lieutenant Fox, and Detectives Mattson, Karanda and Bastura. Complaint ¶¶ 10-24. The Public Safety Department defendants, Danaher, Thomas, Masek, Fox, Mattson, Karanda and Bastura are collectively referred to

---

[4] Finally, while not directly connected to any of the actual causes of action in the Complaint and therefore of no relevance to this case, the plaintiff includes in his complaint comment that, as a Board member, three staff members in the SLFU ( the "DPS Defendants") purportedly made "threatening" statements, namely that the plaintiff "had a problem with SLFU;" that in one staff member's personal opinion, only law enforcement officers should have guns; and that at a previous antique arms show, they went "too easy on those guys, and next time we will drag them out in handcuffs," and if an individual at a Guild show did not have a local permit to sell, they would be dragged "out in cuffs." Complaint ¶ 193.

as the "DPS defendants."  All of the DPS defendants except Thomas are sued in the individual capacities only.  Thomas is sued in his official capacity only.

Plaintiff also has sued two Board officials -- its chair, Christopher R. Adams in his individual capacity only, and its administrative manager, Susan Mazzoccoli, in both her official and individual capacities.  Complaint ¶¶ 25, 33-35. Chair Adams and Director Mazzoccoli are collectively referred to as the "Board defendants."

The amended complaint includes three causes of action.  Plaintiff's First Count is a challenge to Conn. Gen. Stat. § 29-28(b) which establishes 10 eligibility factors and a separate "suitability"" factor for issuing a permit.  The plaintiff alleges that the DPS Defendants refusal to renew plaintiff's permit on grounds of "suitability," and specifically the degree of discretion exercised by DPS Defendants, violates the Second Amendment on the United States Constitution. Complaint Count One, ¶¶ 219, 220.

The Second Count claims that the 15-18 month delay in hearing an appeal is inordinate and raises procedural due process claims that are essentially the same as the original complaint.  Complaint Count Two, ¶¶ 226-228.  The plaintiff contends that DPS defendants deliberately delay the review and processing of appeals in such a manner as to constitute a de facto suspension without due process and that the Board members fail to supervise the DPS defendants all in violation of the Second Amendment on the United States Constitution and Article First, § 15 of the Connecticut Constitution.  Complaint, ¶¶ 226-228.

In his Third Count, the plaintiff contends that the wait period for an appeal "renders meaningless" the right to appeal, and that "SLFU's imposition of barriers to gun possession" is "so outrageously arbitrary as to constitute a gross abuse of governmental authority" and a violation of substantive due process and the Second Amendment on the United States Constitution and Article First, § 15 of the Connecticut Constitution.  Complaint Count Three, ¶¶ 237-241.  This claim is substantially similar to the claim dismissed previously by the district court and upheld by the Second Circuit.[5]

For relief, the plaintiff seeks "money damages," punitive damages, attorney's fees and costs, unspecified prospective injunctive relief, and "such other relief" as the Court deems appropriate.  Complaint, Prayer for Relief.

## III.   LEGAL STANDARDS FOR MOTION TO DISMISS

When considering a Rule 12(b) motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws inferences from those allegations in the light most favorable to the plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232, 236  (1974); Easton v. Sundram, 947 F.2d 1011, 1014-15 (2d Cir.

---

[5] The plaintiff seeks to have this matter brought as a class action.  With respect to his procedural due process claim in Count One, he claims to represent all persons who have been denied permits due to being found unsuitable under Conn. Gen. Stat. § 29-28(b).  Complaint Count One, ¶ 245.  According to Federal Rules of Civil Procedure (FRCP) 23(a)(2) and (a)(3), there must be "questions of law and fact common to the class" and "the claims and defenses of the representative parties are typical of the claims and or defenses of the class."  As will be discussed below, however, the plaintiff was denied permit renewal based on his failure to submit documents regarding citizenship.  Citizenship is a separate requirement and is not related to the suitability factor.  Therefore, plaintiff's specific facts are at variance from the class (assuming there is one) that he claims to represent.  Similarly, with respect to his procedural due process claim in Count Two, he seeks to represent all persons who have "suffered damages" either because the DPS Defendants failed to conduct a an investigation as required by law (Complaint Count Two ¶ 262) or because Chairman Adams and Mazzoccoli failed to "exercise independence and authority over DPS."  Complaint Count Two ¶ 264.  Again, the reason plaintiff failed to have his permit renewed has nothing to do with the alleged harms suffered by the class (if such exists) of person injured by DPS's alleged failure to conduct investigations.

1991), *cert. denied*, 504 U.S. 911 (1992).  The function of a motion to dismiss is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). Dismissal is warranted when, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted.  *See,* Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Frasier v. General Electric Co., 930 F.2d 1004, 1007 (2d Cir. 1991).  A complaint should be dismissed if it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

IV.    ARGUMENT

        Overall, plaintiff's claims are a series of separate Section 1983 actions brought against various government defendants in either their individual or official capacities for alleged violations of the First or Second Amendments seeking money damages and/or injunctive relief.  The Eleventh Amendment bars all money damages claims brought against government officials in their official capacity.  With respect to prospective injunctive relief, plaintiff's claims are moot for the plaintiff's firearms permit has long since been restored.  Regarding claims for money damages against the defendants in their individual capacities these claims fail because 1) the plaintiff lacks standing regarding the specific defendants named; 2) the plaintiff has failed to state a cause of action, and 3) the named defendants are protected by absolute or qualified immunity.

Because standing is a recurrent issue in each of the seven counts of the complaint, it is important to address initially why plaintiff lacks standing particularly with regard to the DPS defendants and Governor Rell.  Following this, each count will be reviewed to determine if the complaint alleges facts sufficient to state a cause of action under Section 1983 and, finally, the defenses of absolute and qualified immunity will be considered.

C.    <u>Standing</u>

Plaintiff lacks standing because the defendants he has named in each count are in most cases not the cause of the alleged injuries.  As one example, with regard to the procedural due process claims, DPS has the authority to revoke a handgun permit but does not hear the administrative appeals from revocation decisions; those appeals are heard solely by the Board.  Conn. Gen. Stat. § 29-32b(b).  Further, the Board has full authority over its docket and how it processes and schedules appeals, not DPS. See, Regs, Conn. State Agencies, §§ 29-32b-5 through -b15.  The Board is an autonomous agency within DPS for administrative purposes only and does not have any "supervisory" authority over DPS.  Conn. Gen. Stat. § 29-32b(a).  Plaintiff failed to sue the Board, either directly or indirectly, failing to sue the Board chair in his official capacity.

The law in this area is clear.  "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury

will be redressed by a favorable decision." <u>Friends of the Earth v. Laidlaw</u> <u>Environmental Services, Inc.</u>, 528 U.S. 167, 180-81 (2000).  "[i]t is the burden of the party who seeks the exercise of jurisdiction in his favor, clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." <u>United States v. Blackburn</u>, 461 F.3d 259, 261 (2d Cir. 2006), *citing* <u>Spencer v. Kemna</u>, 523 U.S. 1, 11 (1998).

Turning to the factual allegations in this case, plaintiff in essence alleges that (1) the statutory "suitability" factor vests undue discretion in the DPS defendants, (2) the DPS deliberately creates a backlog of cases in a manner that violates procedural due process and (3) the overall process is sufficiently slow that it violates substantive due process.

With respect to all claims regarding the *renewal* of plaintiff's permit, the Board defendants have absolutely nothing to do with those actions.  The Board serves a quasi-judicial role and hears administrative appeals from DPS actions regarding pistol permits.  Conn. Gen. Stat. § 29-32(b).  It does not supervise DPS. Renewals are solely conducted by the SFLU division of DPS.  Conn. Gen. Stat. § 29-32.  Governor Rell has no role, of any kind, with respect to permit revocations.

With respect to claims alleging *delays* in the Board's processing of an appeal from a DPS revocation order, the delay is not traceable to the DPS officials sued here, but lies directly with the purview of the Board.  Specifically, the DPS Defendants do not hear the administrative appeals from the denials of gun permits, nor do they schedule the hearings.  Rather, DPS is the defending party to administrative appeals brought before the Board.  The Board of Firearm

Permit Examiners is the adjudicating agency, and its Secretary (indeed until November 2007 the plaintiff himself) is responsible for setting hearing dates on the appeals pending before the Board. Regs, Conn. State Agencies, §§ 29-32b-5, 29-32b-6. The Board has full statutory discretion as over its own agenda and calendar. Governor Rell has no role, of any kind, in setting the Board's agenda.

Moreover, plaintiff likewise lacks standing to bring claims regarding the delay in processing appeals against the named Board defendants. Plaintiff did not sue the Board, Board members, or the Chair of the Board in his official capacity (which would have served as a suit against the Board). Rather, plaintiff only sued the Board Chair in his individual capacity and the Board's administrative manager in both her individual and official capacities. The Chair in his individual capacity has no authority separate from the Board, and cannot provide the relief plaintiff seeks. The Board's administrative manager is exactly that -- she handles the logistical and administrative aspects of the Board, and has no role in the adjudication of the merits of appeals. An order against either one of these defendants would have no effect for neither defendant has the individual authority to render the relief plaintiff seeks, and the Board's administrative manager lacks any such authority in her official capacity as well.

Because the critical elements of standing cannot be satisfied, plaintiff lacks standing to pursue his claims against these defendants, and his claims must be dismissed. Furthermore, plaintiff has also failed to allege facts sufficient to state a claim under § 1983 as will be discussed below.

D.    **Section 1983 Claims**

13

As noted above, plaintiff has brought three counts under § 1983. The first count that the "suitability" factor under Conn. Gen. Stat. § 29-28 violates the Second Amendment. The second count is the procedural due process claim remanded by the Second Circuit and contends that the delay in hearing appeals constitutes a de facto suspension without due process and the third count is a modification of the substantive due process count whose dismissal was upheld by the Second Circuit.

Each of the three counts fails to state a claim under § 1983.

Standard of Review under Section 1983.

Turning to the merits of each count of the Amended Complaint, it is clear that plaintiff has brought all three counts as Section 1983 actions against differing arrangements of named government officials for alleged violations of the First and Second Amendments to the United States Constitution. In this regard, the law is clear.

"Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Albright v. Oliver, 510 U.S. 266, 271, 114 S. Ct. 807, 811 (1994) (internal citations omitted).

Section 1983 claims for *prospective relief* against state officers may be asserted *only against the officers in their official capacities*, and cannot stand against state officers in their *individual* capacities. Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985); Hill v. Shelander, 924 F.2d 1370, 1372-74 (7th Cir. 1991). *See* Poe v. Massey, 3 F.Supp.2d 176, 178 (D. Conn. 1998) (granted motion to dismiss where state official sued only in individual capacity and complaint only sought

injunctive relief).  Section 1983 claims for damages against state officers may be asserted only against the officers in their individual capacities, and cannot stand against state officers in their official capacities.  Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989).

Where damages are sought in a §1983 action, the individual defendant must be personally responsible for the alleged constitutional deprivation.  An allegation of personal involvement is a necessary prerequisite for a valid cause of action under §1983, and a plaintiff must demonstrate the defendant's direct or personal involvement in the actions that are alleged to have caused the constitutional deprivation.  Rizzo v. Goode, 423 U.S. 362, 376-378 (1976);  Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 121 (2d cir. 2004); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

Consistent with the requirement that personal involvement is required for a claim under §1983, the Supreme Court has ruled that the general doctrine of respondeat superior does not suffice to state a claim under §1983.   Monell v. New York City Dept. of Social Services, 436 U.S. 658, 692-95 (1978).  An official cannot be held liable merely because he or she occupies a high position in the government agency hierarchy.  Colon v. Coughlin, 58 F.3d 865, 874 (2d Cir. 1995); Meriwether v. Coughlin, 879 F.2d 1037, 1046 (2d Cir. 1989); Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999).  Plaintiff must allege, and ultimately prove, "personal involvement of [the defendants] sufficient to support their liability for wrongful acts," not merely their "linkage in  the  . . . chain of command."  Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985).  In Poe v. Leonard, 282 F.3d 123, 141

(2d Cir. 2002), the Second Circuit set forth the standard for liability when the cause of action is based on a supervisor's deliberate indifference to the rights of others as follows:

> the rights of others by his failure to act on information indicating unconstitutional acts were occurring or for <u>his gross negligence</u> in failing to supervise his subordinates who commit such wrongful acts, provided that the plaintiff can show an affirmative causal link between the supervisor's inaction and her injury.

<u>Poe</u>, *supra*, 282 F.3d at 140. The rule gleaned from <u>Poe</u> is that plaintiff must allege and prove specific knowledge of facts putting each individual defendant on notice of facts giving rise to a constitutional violation. Otherwise the daily operational decisions of every lower level supervisor would subject every manager to individual liability.

### Count One

Plaintiff's first claim is that the DPS defendants have violated the Second Amendment by denying him his permit pursuant to the suitability factor in Conn. Gen. Stat. § 29-28(b). More specifically, plaintiff claims that the "discretion exercised by the DPS Defendants in refusing to renew Plaintiff's state permit violated the Second Amendment." Complaint ¶ 220.

The initial problem with this count is that his renewal was not delayed because of a failure to meet the suitability factor but because he failed to submit proof of citizenship. As previously noted, one of the specific statutory exclusions is if the applicant is "<u>an alien illegally or unlawfully in the United States</u>." Conn. Gen. Stat. § 29-28(b)(9). *See also,* Conn. Gen. Stat. §§ 29-28(f), 29-36f(b)(9). It is clear that Article first, § 15 "limits the rights conferred to

'citizens'." <u>Benjamin v. Bailey</u>, 234 Conn. 455, 464 n.6 (1995).   Citizenship or

legal residency is one of the statutory prerequisites for obtaining a gun permit.

Conn. Gen. Stat. §§ 29-28(f), 29-28(b)(9), 29-36f(b)(9).   The state not only can

require proof of citizenship or legal residency, but if it fails to do so, it is ignoring

one of the statutory exclusions to the issuance of a gun permit.   Thus,

"suitability" was simply not an issue in this case.   When he finally complied with

the statute, as the Second Circuit found, his permit was restored.   Therefore, the

delay in processing his permit renewal, if any, was of his own making.

   Alternatively, it is possible to interpret the First Count of the Amended

Complaint as an inartfully worded challenge to the statute as being void for

vagueness.   If so, "the constitutionality of a statutory provision being attacked as

void for vagueness is determined by the statute's applicability to the particular

facts at issue." <u>State v. Pickering</u>, 180 Conn. 54, 57 (1980).   Any other rule would

"put courts in the undesirable position of considering every conceivable

situation which might possibly arise in the application of complex litigation." <u>Id.</u>

Because the plaintiff was not denied renewal because of lack of suitability, there

are no predicate facts for a court to review relevant to this claim.

   The plaintiff does not argue that the state does not have an interest in

ensuring that non-citizens not have access to firearms. The rights preserved

under Article first, § 15 of the Connecticut Constitution extend only to citizens,

<u>Benjamin v. Bailey</u>, 234 Conn. 455, 464 n.6 (1995), and plaintiffs cannot dispute –

and the Court can take judicial notice of – the risks associated with firearms in

the possession of illegal aliens. It is not unreasonable, therefore, for state

officials to require proof of citizenship and plaintiff provides no reason, other than stubbornness, for his refusal to cooperate with this request.

Count Two

In Count Two, plaintiff claims his procedural due process rights were violated because the DPS defendants deliberately create a backlog of cases and delay resolution of permit appeals until just before the hearing date "so that the revocation process itself becomes the punishment." Count Two, ¶ 250. Plaintiff also names the Board defendants because he alleges that they fail to supervise the DPS defendants properly and the Governor because she allegedly disregarded a report about this backlog.

Initially, it is important to remind the court of the standing matters addressed earlier. Plaintiff has advanced his claims in count two against *all* defendants but the central element in this count is that the *DPS* creates a backlog of cases that effectively overloads the Board's docket and that the Board has failed to supervise DPS to prevent this. However, previously noted, DPS has no control or jurisdiction over the Board and only the Board is given the power to conduct firearms permit hearings. Conn. Gen. Stat. § 29-32b. Furthermore, the Board defendants have no supervisory authority or control over the DPS defendants and thus plaintiff lacks any standing in this count against the Board or its members. Conn. Gen. Stat. § 29-32b(a)(Board connected to DPS "for administrative purposes only.") Finally, there is no allegation that the Governor did anything with respect to the revocation of the plaintiff's permit or even knew about it. The bare assertion that the Governor received a single

report claiming that a backlog in permit appeals exists is hardly a basis for a claim of direct involvement in violating constitutional rights necessary to sustain a claim.

Turning to the merits of plaintiff's § 1983 claim against the DPS defendants, the law is clear that to establish a violation of procedural due process, plaintiff must show that he had a legally protected liberty or property interest and that the state defendants denied him that interest *without due process of law*. O'Connor v. Pierson, 426 F.3d 187, 196 (2d Cir. 2005).

The Court of Appeals, in reviewing this matter, expressed serious reservations about the eighteen month delay in processing permit appeals in light of the Court's recent decision in Spinelli v. City of New York, 579 F.3d 160, 174-76 (2d Cir. 2009). Specifically, while solicitous of the state's interest in ensuring the safety of the public, the Court did not believe that this interest would permit "indefinitely denying permit applications. . . ." Kuck v. Danaher, 600 F.3d at 167.

The Defendants do not accept that the delays in the state permit appeal process constitute a violation of anyone's constitutional rights. All parties agree that the Connecticut state law provides that its citizens have a liberty interest in a "fundamental right to bear arms in self-defense," which must be protected by procedural due process. Rabbitt v. Leonard, 36 Conn. Supp. 108, 112 (1979). Further, as noted by the Court of Appeals, in evaluating these claims, courts apply the factors set forth in Mathews v. Eldridge, 424 U.S. 319, 335 (1976), balancing "(1) the private interest at stake; (2) the risk of an

erroneous deprivation of that interest through the procedures used and the probable value (if any) of alternative procedures; (3) the government's interest, including the possible burdens of alternative procedures." O'Connor, 426 F.3d at 197.

The Defendants continue to assert that the state has a significant interest in regulating the ownership of firearms. See State v. Bailey, 209 Conn. 322, 346 (1988). Careful review is necessary to ensure that the permits to own or carry pistols are not granted in error.   The Defendants do not agree with the Plaintiff's allegation that there was a deliberate process of delaying permit appeals for any reason, especially to deny citizens their constitutional rights and should this matter proceed to summary judgment, Defendants will provide factual support for this assertion.  However, for purposes of a motion to dismiss, it is necessary to treat all allegations in the amended complaint as true.  For purposes of this motion, therefore, and even assuming that there was an otherwise unexplained delay of up to 18 months in permit appeals, the Defendants are clearly protected by the doctrine of qualified immunity.

As will be discussed in a separate section below, the doctrine of qualified immunity shields public officials performing discretionary functions from personal liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Anderson v. Creighton, 483 U.S. 635 (1987).

In analyzing a claim of qualified immunity, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Saucier</u>, 533 U.S. at 202.  The focus is on whether a reasonable official in the position of the defendant could have believed that his actions were lawful. <u>Amore v. Navarro</u>, 610 F. 3d 155, 162 (2d. Cir. 2010).  If reasonable officials could disagree on the legality of the defendant's actions, the official is entitled to qualified immunity. <u>Lennon v. Miller</u>, 66 F. 3d 416, 420-421 (2d Cir. 1995); <u>Weg v. Macchiarola</u>, 995 F. 2d 15, 18 (2d. Cir. 1993).  The test is one of objective reasonableness, and is determined by establishing whether a reasonable official in the defendant's position could have believed that his actions were lawful, in light of clearly established law.  <u>Anderson v. Creighton</u>, 484 U.S. 635, 107 S. Ct. 3034, 3039 (1987).  "When it is objectively reasonable for a public official to believe that his conduct is not in violation of a plaintiff's federal rights, that public official is protected by qualified immunity. See <u>P.C. v. McLaughlin</u>, 913 F.2d 1033, 1039 (2d Cir. 1990)."

In its remand decision, the Court of Appeals cited the recent <u>Spinelli</u> case in which a gun shop owner was denied a permit for a 53 day period. <u>Kuck v. Danaher</u>, 600 F.3d at 161.  This case is not squarely on point because the permit denial entirely prevented the shop owner from conducting their business, a factor not involved in this case.   More importantly, <u>Spinelli</u> was decided in 2009. Like most Second Amendment law, it is very recent.  The relevant acts in this case occurred in 2007.  At the time all of the relevant acts occurred in this case,

the decisional law suggested that an 18-month appeal period would not trigger constitutional concerns.

In fact, under the established law at the time, delays up to two years had not been found to violate due process.   Gyadu v. Workers' Compensation Commission, 930 F. Supp. 738, 742 n.1, 745, 752 (D. Conn. 1996), aff'd, 1997 U.S. App. LEXIS 32222 (2d Cir. Nov. 17, 1997) (copy attached) (over two year delay in workers' compensation hearing did not violated procedural due process). See also, Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 196 (2d Cir. 2002) (over two year delay did not constitute irreparable harm). Interestingly, the Court of Appeals opinion in this case cited Isaacs v. Bowen, 865 F.2d 468, 477 (2d Cir. 1989), a case that upheld a nineteen-month delay in resolving Medicare Part B claims.

Here, even assuming all of the facts alleged in the Amended Complaint, the alleged delays have never exceeded 18 months at a time when available Second Circuit precedent repeatedly upheld 19 and 24-month delays.  Further, it is worth noting that the delays in this case were directly related to the fact that the plaintiff deliberately refused to provide citizenship documentation needed to complete the DPS's review.  In 2007, no reasonable state officer could know that an 18-month delay largely caused by a plaintiff would violate the Constitution.

Count Three

Plaintiff's third count claims that appeal process wait period is so long that it constitutes a violation of substantive due process.

When challenging the actions of a government official on substantive due process grounds, "a plaintiff must show not just that the action was literally arbitrary, but that it was 'arbitrary in the constitutional sense.' Mere irrationality is not enough: 'only the most egregious official conduct,' conduct that 'shocks the conscience,' will subject the government to liability for a substantive due process violation based on executive action." O'Connor v. Pierson, 426 F.3d 187, 203 (2d Cir. 2005) (citations and internal quotation marks omitted) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)); see also Natale v. Town of Ridgefield, 170 F.3d 258, 262 (2d Cir. 1999) ("substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority."); Pina v. Lantz, 495 F. Supp. 2d 290, 297 (D. Conn. 2007) (rejecting substantive due process claim because no reasonable juror could find that Plaintiffs' allegations shock the conscience nor would a reasonable juror describe the allegations as "outrageous.")

Once again, the DPS Defendants named in this action have no authority over the timing of the Board's appellate process, but even if they did, taking extra time to ensure that gun permits are not erroneously granted scarcely reflects a "gross abuse of governmental authority." Indeed, the reverse could very well be true -- if state officials rushed gun permit appeals without carefully reviewing the merits of applications and appeals, it could very well rise to the level of "gross abuse of governmental authority."

The Second Circuit, in reviewing and affirming the dismissal of the plaintiff's substantive due process claim in his first action held:

> The fact state officials required Kuck to produce proof
> of citizenship or legal residency in connection with his
> permit renewal application is hardly outrageous or
> shocking.  Even more, substantive due process does
> not entitle federal courts to examine every alleged
> violation of state law, especially ones that, while
> perhaps vexatious, are more routine than egregious.
> This is especially so because, under Connecticut law,
> Kuck and other class members have recourse to state
> forums to challenge the merits of DPS decisions.

Kuck v. Danaher, 600 F.3d 159, 167 (2d Cir. 2010).  As the Second Circuit has

clearly noted, proof of citizenship is hardly such an onerous or outrageous

condition of firearms ownership to constitute a violation of the constitution.[6]

## V.   OTHER DEFENSES.

Plaintiff's Claim are Barred by Absolute Immunity.

Plaintiff has sued both the opposing party and the adjudicatory board in

his administrative appeal regarding the merits and process of his administrative

appeal.  Because both the Board and the DPS are performing judicial functions,

plaintiff's claims are barred by absolute immunity.

The U.S. Supreme Court has held that although 42 U.S.C § 1983 does not

expressly refer to any common law immunities, the common law absolute

immunity accorded to judges, Pierson v. Ray, 386 U.S. 547 (1967), and

prosecutors, Imbler v. Pachtman, 424 U.S. 409, 431 (1976), is applicable in a §

1983 action for damages.  This means that a judge is absolutely immune from

suit under § 1983 when performing a judicial function, unless he acts in the clear

absence of all jurisdiction.  Stump v. Sparkman, 435 U.S. 349, 356-57 (1978).

Similarly, a prosecutor is absolutely immune from liability for initiating a

---

[6] To the extent that the Plaintiff continues to raise a First Amendment claim, that claim has already been rejected by the Court of Appeals. Id. At 168.

prosecution and presenting the state's case. Imbler, 424 U.S. at 431.  The

rationale for such immunity is to preserve the independence of the judicial

process and to protect judges and prosecutors from being harassed and

intimidated in the performance of their duties by unfounded litigation. Imbler,

424 U.S. at 422-423.

In Butz v. Economou, 438 U.S. 478, 514 (1978), the Supreme Court

concluded that the same absolute immunity from suit accorded to judges and

prosecutors is equally applicable to agency officials who perform comparable

functions.  In reaching this conclusion, the Court analyzed the policy reasons

behind absolute judicial and prosecutorial immunity and concluded that the

same concerns are present in many administrative agency actions and justify the

same protections.  Significantly, such immunity extends not only to members of

commissions and boards, but also to their personnel.  See, e.g., Bettencourt v.

Board of Registration in Medicine of Comm. Of Mass., 904 F.2d 772 (1st Cir.

1990)(absolute immunity barred claims against members of board of medical

examiners and board's staff, including its legal adviser); Bass v. Attardi, 868 F.2d

45, 50 (3rd Cir. 1989)(absolute immunity barred claims against municipal planning

board members and the board's counsel and consultant); Oliva v. Heller, 839

F.2d 37, 40 (2d Cir. 1988)(absolute immunity barred claims against law clerks

who assisted judges in judicial functions).

In the present case, the Board acts as a quasi-judicial agency, and its

officials, irrespective of their titles, perform functions in all respects comparable

to those of state or federal judges in a setting similar to that of a court, and thus

are also entitled to absolute immunity from §1983 liability for their actions with respect to plaintiff's administrative appeal. *See, e.g.*, <u>Butz v. Economou</u>, 438 U.S. 478, 511-17 (1978).  Specifically, their duties include conducting hearings "according to the rules of evidence," Conn. Gen. Stat. § 29-32b(e), holding hearings, keeping transcripts of hearings, administering oaths, ruling on the admissibility of evidence, and issuing decisions. <u>Id</u>. The Board is specifically granted "the power to compel attendance at its sessions." Conn. Gen. Stat. § 29-32b(d).   Each of these functions is directly comparable to the duties of judges and it would difficult to image a board or commission which in all respects more clearly duplicates the role and function of a judicial body.  Further, the procedural protections provided to the respondents, including the right to counsel and the opportunity for appeal, obviate the need for private damages actions. <u>See</u> Regulations Conn. Agencies, SEEC, §   34; Conn. Gen. Stat. § 4-183; Butz, 438 U.S. at 512.  Because Mr. Adams served as a member of the Board, and Ms. Mazzacolli as the Executive head are responsible for assisting the board members in carrying out their quasi-judicial functions, absolute immunity protects the board defenses. <u>Bettencourt v. Board of Registration in Medicine of Comm. Of Mass.</u>, 904 F.2d 772 (1st Cir. 1990); <u>Bass v. Attardi</u>, 868 F.2d 45, 50 (3rd Cir. 1989); Oliva v. Heller, 839 F.2d 37, 40 (2d Cir. 1980).

Finally, the SLFU unit at DPS acts in a quasi-prosecutorial capacity and not only investigates the case initially, it presents the case for revocation to the Board in the same manner as a prosecutor in a conventional action.  Just as a prosecutor is absolutely immune from §1983 liability for initiating a prosecution

26

and presenting the State's case, the various members of the SLFU unit at DPS, all who initiate and present the State's case, are also absolutely immune from §1983 liability.  *See* Imbler v. Pachtman, 424 U.S. 409, 431 (1976); Buckley v. Fitzsimmons, 509 U.S. 259, 268 (1993).

E.     **Plaintiff's Claims are Barred by Qualified Immunity**

All of the defendants are protected by qualified immunity under 42 U.S.C. § 1983 as they would have no reason to know that their alleged actions were unlawful.  Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985); Giacolone v. Abrams, 850 F.2d 79, 84 (2d Cir. 1988).  "The entitlement is an immunity from suit rather than a mere defense to liability . . ." Id.  The principal purpose of the doctrine is to enable public officials to do their jobs without fear of subsequently facing liability for actions they could not reasonably have believed violated the law at the time, Harlow v. Fitzgerald, 102 S. Ct. at 2727 (1982), and to avoid disruption to effective government counsel by the burdens of litigation.  Mitchell v. Forsyth, 472 U.S. at 526-527.

F.     **Qualified Immunity Standard**

The doctrine of qualified immunity shields public officials performing discretionary functions from personal liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Anderson v. Creighton, 483 U.S. 635 (1987).  The principal purpose of qualified immunity is to enable public officials to function

without fear of subsequently facing liability for actions they could not have reasonable believed at the time were unlawful, Harlow, 457 U.S. at 814, and to avoid disruption to effective government caused by the burdens of litigation. Mitchell v. Forsyth, 472 U.S. 511, 526-527 (1985).

In analyzing a claim of qualified immunity, the court conducts a two part inquiry. Pearson v. Callabhan, __ U.S. __, 129 S. Ct. 808, 815 (2009); Saucier v. Katz, 533 U.S. 194, 201 (2001).  In most cases, the first question is "whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right." Pearson, 129 S. Ct. at 816; see also Saucier, 533 U.S. at 201.  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Saucier, 533, U.S. at 201.

"Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." Pearson, 129 S. Ct. at 816.  "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." Id.

Although the Supreme Court in Saucier required this two-pronged inquiry to be conducted in sequence, the Court's subsequent decision in Pearson permits courts to exercise their discretion in deciding the order in which to conduct the qualified immunity analysis.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct

was unlawful in the situation he confronted." <u>Saucier</u>, 533 U.S. at 202.  The test is one of objective reasonableness and the focus is on whether a reasonable official in the position of the defendant could have believed that his actions were lawful.  <u>Amore v. Navarro</u>, 610 F. 3d 155, 162 (2d. Cir. 2010).  If reasonable officials could disagree on the legality of the defendant's actions, the official is entitled to qualified immunity.  <u>Lennon v. Miller</u>, 66 F. 3d 416, 420-421 (2d Cir. 1995); <u>Weg v. Macchiarola</u>, 995 F. 2d 15, 18 (2d Cir. 1993).

Where qualified immunity applies, it is "an immunity from suit rather than a mere defense to liability; and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." <u>Saucier</u>, 533 U.S. at 201. Accordingly, the Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage of litigation." <u>Pearson v. Callahan</u>, __ U.S. __., 129 S. Ct. 808, 815 (2009).

The doctrine of qualified immunity seeks to ensure that conscientious public officials will feel free to discharge their duties unflinchingly and without diversion, that able citizens are not deterred from accepting public office, and that needless expense can be avoided.  <u>Harlow</u>, 102 S. Ct. at 2736.  The test is one of objective reasonableness, and is determined by establishing whether a reasonable official in the defendant's position could have believed that his actions were lawful, in light of clearly established law.  <u>Anderson v. Creighton</u>, 484 U.S. 635, 107 S. Ct. 3034, 3039 (1987).  Qualified immunity protects individuals when performing discretionary functions where their conduct did not violate clearly established statutory or constitutional rights of which a

reasonable person would have known.  *See* <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). "When it is objectively reasonable for a public official to believe that his conduct is not in violation of a plaintiff's federal rights, that public official is protected by qualified immunity.  See <u>P.C. v. McLaughlin</u>, 913 F.2d 1033, 1039 (2d Cir. 1990)."  "[E]vidence of improper motive is irrelevant on the issue of qualified immunity...." <u>Crawford-el v. Britton</u>, 523 U.S. 574, 589, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998). "A 'circumstantial flavor' of improper conduct ... cannot defeat summary judgment on  qualified immunity." <u>Daniels v. Townsley</u>, 161 F. Supp. 2d 63, 71 (D. Conn. 2001).

Most importantly, even if the court concludes that the law was clearly established, the Court must determine whether it was objectively reasonable for the official to believe that his actions did not violate those rights. <u>Oliveira v. Mayer</u>, 23 F.3d 642, 648-49 (2d Cir. 1994).  The focus is on whether reasonable officials in the position of the defendants could have believed their actions were lawful.  Where reasonable officials could disagree, the official is entitled to qualified immunity. <u>Weg v. Macchiarola</u>, 995 F.2d 15, 18 (2d Cir. 1993).

Here, the plaintiff complains of two actions:  (i) the denial of his renewal application for his gun permit, unless and until he provided documentary proof of U.S. citizenship or legal residency, and (ii) the delay in the Board's hearing of appeals.  With respect to the denial of his renewal for his gun permit, the state constitution, statutes and case law clearly establish illegal aliens are not entitled to gun permits in the State of Connecticut. *See* Article First, § 15; Conn. Gen. Stat. §§ 29-28(f), 29-28(b)(9), 29-36f(b)(9); <u>Benjamin v. Bailey</u>, 234 Conn. 455, 464

n.6 (1995).  No reasonable public official in the defendants' positions would have any reason to believe that the denial of the renewal for failure to provide proof of citizenship or legal residency was unlawful or unconstitutional.

With respect to the delay between filing of an appeal and the Board's scheduling of a hearing on the appeal, once again no reasonable public official in the defendants' positions would have any reason to believe that their actions were unlawful or implicated anyone's constitutional rights.  As was noted above, Spinelli and most other Second Amendment cases are very new law.  At the time, caselaw suggested that longer delays did not trigger constitutional concerns. See, Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 196 (2d Cir. 2002) (over two year delay did not constitute irreparable harm); Isaacs v. Bowen, 865 F.2d 468, 477 (2d Cir. 1989)(Nineteen-month delay in resolving Medicare Part B claims upheld.)   There simply is no basis for allegations that state defendants were on notice that they were even at risk of violating constitutional rights.  Thus even if the plaintiff had stated a claim for which relief could be granted (and the defendants respectfully submit that he has not), then the state defendants are entitled to qualified immunity.

G.    Eleventh Amendment

Finally, the plaintiff carefully sues the defendants in their individual capacities for damages, and in both their official and individual capacities for "prospective injunctive relief and attorney's fees."  Complaint ¶ 23.  Although a suit will lie against a state official in his official capacity for prospective injunctive relief, the claim for attorneys' fees against an official in his official

capacity is barred by operation of the Eleventh Amendment.  <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 71 (1989); <u>Berman Enters., Inc. v. Jorling</u>, 3 F.3d 602, 606 (2d Cir.1993).  *See also* <u>Pennhurst State School and Hospital v. Halderman</u>, 465 U.S. 89, 121 (1984); <u>Ex Parte Young</u>, 209 U.S. 123 (1908).  Plaintiff's claims for attorneys' fees against the state defendants in their official capacities are barred by the Eleventh Amendment.

## CONCLUSION

The Board, and not the DPS defendants, is responsible for the timely processing of appeals presented to the Board.  Given the compelling state interest in not issuing gun permits to inappropriate persons, the current delays would not and do not raise procedural or substantive due process issues even if these claims had been brought against the Board.

The plaintiff refused to provide proof of U.S. citizenship or legal residency with his gun permit renewal application as a matter of principle.  However, state statutes clearly require that gun permits not be issued to illegal aliens, and the

For all of the foregoing reasons, the defendants respectfully request that the plaintiff's claims be dismissed in their entirety.

> DEFENDANTS, JOHN A. DANAHER III, JAMES M. THOMAS, M. JODI RELL, ALARIC FOX, ALBERT J. MASEK, JR., BARBARA MATTSON, THOMAS KARANDA, RONALD A. BASTURA, SUSAN MAZZOCCOLI AND CHRISTOPHER R. ADAMS in their Official and Individual Capacities
>
> RICHARD BLUMENTHAL
> ATTORNEY GENERAL

BY:    /s/ Robert D. Snook
> Robert D. Snook AAG (ct10897)
> 55 Elm Street, P.O. Box 120
> Hartford, CT  06141-0120
> Tel: (860) 808-5020
> Fax: (860) 808-5347
> Robert.Snook@ct.gov

## CERTIFICATION

I hereby certify that on December 6, 2010, a copy of the foregoing Memorandum in Support of Motion to Dismiss was filed electronically. Parties may access this filing through the Court's system. Pursuant to the Court's standing order, a courtesy paper copy of this memorandum also was sent by first-class mail, postage prepaid, to the court's chambers.

/s/ *Robert D. Snook*
Robert D. Snook
Assistant Attorney General