UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| M. PETER KUCK, individually and on behalf of others similarly situated, : : : | |
| Plaintiffs, : | CASE NO.: 3:07-CV-1390-VLB |
| : | |
| v. : | |
| : | |
| JOHN A. DANAHER III, ET AL., : : | |
| Defendants. : | APRIL 20, 2011 |

**PLAINTIFF'S SUR-REPLY BRIEF
TO DEFENDANTS' REPLY BRIEF RE: MOTION TO DISMISS**

The Plaintiff M. Peter Kuck ("Kuck"), by and through his undersigned counsel and in accordance with the Chambers Practices of this Court, hereby files a Sur-reply Brief, in response to the Defendants' Brief in Support of Motion to Dismiss.

**I.     Introduction**

Kuck's "principal claim is a procedural due process challenge alleging that DPS-in tandem with the Board of Firearms Permit Examiners ("the Board")-has a practice of improperly denying permits, unnecessarily prolonging the appeals that follow, and then quietly resolving disputes at the last minute." Kuck v. Danaher, 600 F.3d 159, 160 (2d Cir. 2010). In opposing the Defendants' December 6, 2010, Motion to Dismiss the Amended Complaint, Kuck incorporated a Chart appended to his opposition memorandum referencing specific paragraphs of the Amended Complaint alleging unlawful conduct, by commission or omission, on the part of the Defendants. These paragraphs contain sufficient factual matter, accepted as true, to state claims plausible on their face inferring the role each

**Defendant adopted in furthering the practice summarized by the Second Circuit as the gravamen of Kuck's Complaint. The same Chart is appended to this Sur-reply Brief.**

**II.     The Specificity of the Allegations in the Amended Complaint**

The chart sets forth the following specific allegations against the Defendants:

1. John A. Danaher III ("Danaher")[1]

2. Albert J. Masek, Jr. ("Masek")[2]

---

[1] As the Commissioner of the Department of Public Safety, Danaher delegated his responsibility to issue, revoke, and renew state permits to the DPS State Licensing and Firearms Unit (SLFU) and its assigned members. He ignored and was deliberately indifferent to a May 14, 2007, letter from the Board requesting authority for the DPS SLFU's state permit renewal identification requirements, referencing an audit report that cited DPS for delaying hearings by not reviewing cases prior to the scheduled hearing dates, and asking for DPS cooperation in expediting the appeals process. Danaher was made directly aware of the causes of the delay at a meeting held in January 2008 where he chose to adopt the position taken by DPS Defendant Alaric Fox that "suitability" was the standard set by law enforcement and that holding a state permit was a "privilege" with the DPS position for a "take the permit" preference. See attached Chart with citations to paragraphs in Amended Complaint. These facts are alleged in the Amended Complaint based on information obtained pre-discovery and constitute "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face that Danaher's conduct resulted in the DPS practice of improperly denying permits, unnecessarily prolonging the appeals that follow, and then quietly resolving disputes at the last minute. Kuck v. Danaher, 600 F.3d at 162. The specific and non-conclusory nature of the allegations merit further development through discovery.

[2] Masek, as supervisor of the DPS SLFU, demanded that Kuck provide a birth certificate, United States passport, or voter registration card as proof of citizenship or legal residency. He was responsible for the delays in returning state permits to individuals by adopting a practice that did not require the DPS SLFU members to review cases prior to scheduled hearings. The state Auditors attributed the delays in returning state permits to this practice. See attached Chart with citations to paragraphs in Amended Complaint. These facts are alleged in the Amended Complaint based on information obtained pre-discovery and constitute "sufficient factual matter, accepted as true, to state a claim to

3. Barbara Mattson ("Mattson")[3]

4. Thomas Karanda ("Karanda") and Ronald A. Bastura ("Bastura")[4]

---

relief that is plausible on its face that Masek's conduct resulted in the DPS practice of improperly denying permits, unnecessarily prolonging the appeals that follow, and then quietly resolving disputes at the last minute. Kuck v. Danaher, 600 F.3d at 162. The specific and non-conclusory nature of the allegations merit further development through discovery.

[3] Mattson defended the DPS SLFU denial of Kuck's renewal application before the Board in asserting that Kuck's refusal to produce a birth certificate, United States passport, or voter registration card rendered him unsuitable. At the time, the DPS SLFU had Kuck's birth certificate in its database. Mattson was directly involved in communicating the DPS SLFU plans to return state permits just prior to hearings after appellants had waited between fourteen and twenty-two months for a hearing. She also attempted meetings with the Office of the Governor to encourage Kuck's removal from the Board and as Board Secretary when Kuck questioned the backlog of appeals. See attached Chart with citations to paragraphs in Amended Complaint. These facts are alleged in the Amended Complaint based on information obtained pre-discovery and constitute "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face that Mattson's conduct resulted in the DPS practice of improperly denying permits, unnecessarily prolonging the appeals that follow, and then quietly resolving disputes at the last minute. Kuck v. Danaher, 600 F.3d at 162. The specific and non-conclusory nature of the allegations merit further development through discovery.

[4] Karanda and Bastura were assigned to the DPS SLFU with Mattson. Their improper decisions to revoke and deny state permits resulted in the backlog. Their failure to review the revocations and denials prior to hearing resulted in the delay in the return of state permits. In determining that the state permits would be returned prior to hearing, Karanda and Bastura, along with Mattson, as supervised by Masek, were able to avoid Board scrutiny of their decisions. To implement the practice of improperly denying permits, unnecessarily prolonging the appeals that follow, and then quietly resolving disputes at the last minute, each member of the DPS SLFU needed to cooperate. See attached Chart with citations to paragraphs in Amended Complaint. These facts are alleged in the Amended Complaint based on information obtained pre-discovery and constitute "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face that Karanda's and Bastura's conduct resulted in the DPS practice of improperly denying permits, unnecessarily prolonging the appeals that follow, and then quietly resolving disputes at the last minute. Kuck v. Danaher, 600 F.3d at 162. The specific and non-conclusory nature of the allegations merit further development through discovery.

4. Alaric Fox ("Fox")[5]

5. M. Jodi Rell ("Governor Rell")[6]

6. Susan Mazzoccoli ("Mazzoccoli") and Christopher R. Adams ("Adams")[7]

---

[5] Fox, as Commissioner Danaher's confident and advisor, informed and adopted the position at a January 2008 meeting with Commissioner Danaher that holding a state permit is a privilege and supported and furthered the DPS preference to "take the permit" in carrying out the DPS Commissioner's delegation of authority to issue, deny, and revoke state permits. Fox implemented his position throughout the DPS that suitability is the standard set by law enforcement. These facts are alleged in the Amended Complaint based on information obtained pre-discovery and constitute "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face that Fox's conduct resulted in the DPS practice of improperly denying permits, unnecessarily prolonging the appeals that follow, and then quietly resolving disputes at the last minute. Kuck v. Danaher, 600 F.3d at 162. The specific and non-conclusory nature of the allegations merit further development through discovery.

[6] The state Auditors of Public Accounts ("Auditors") performed audits that placed the responsibility for the delays on the DPS Commissioner and the DPS SLFU. The Auditors told Governor Rell that for fiscal years ending June 30, 2001, and 2002, the estimated wait time for a hearing before the Board had increased from three months to fourteen months as of January 23, 2003. For fiscal years ending June 30, 2003, and 2004, the Auditors noted that the backlog as of May 30, 2005, was fourteen months. In May 2007, the estimated wait time was seventeen months. Governor Rell received these reports indicating that DPS contributed to the backlog by not reviewing and then settling the majority of the cases until just prior to the scheduled hearing. The Auditors told Governor Rell that if the DPS reviewed the cases in a timely manner then state permits would be returned sooner. (Am. Compl. ¶¶ 74-77, 81-82) These facts are alleged in the Amended Complaint based on information obtained pre-discovery and constitute "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face that Governor Rell's conduct resulted in the DPS practice of improperly denying permits, unnecessarily prolonging the appeals that follow, and then quietly resolving disputes at the last minute. Kuck v. Danaher, 600 F.3d at 162. The specific and non-conclusory nature of the allegations merit further development through discovery.

[7] The Chart includes eighteen paragraphs of specific allegations against Mazzoccoli and seventeen paragraphs of specific allegations against Adams based on information obtained pre-discovery and constituting "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face that Mazzoccoli's and Adams' conduct resulted in the DPS practice of improperly denying permits, unnecessarily prolonging the appeals that follow, and then quietly resolving disputes at the last minute. Kuck v. Danaher, 600 F.3d at 162.

  7. Current DPS Commissioner[8]

**III.   Kuck was Entitled to Due Process on the Denial of his Renewal Application**

Procedural due process is not dependent upon the merit of an individual's cause.  The deprivation of a right creates an interest which requires a meaningful and timely opportunity for hearing no matter the outcome of the hearing or the state's opinion of the merits.  Whether an individual prevails at a hearing cannot impact the pre- or post-deprivation process due.  The Defendants' position that Kuck's injury was due to own conduct is not supported in the law as a justification for the denial of due process.

The state's Motion to Dismiss and Reply Brief ignore and fail to address the allegations in the Amended Complaint.  In its Motion to Dismiss, the state told this Court that Kuck was no longer a member of the Board.  This was false.  Despite representing the Board, the state was not aware that Kuck was on the Board.  In its Reply Brief, the state informs this Court that "because it is "undisputed that Plaintiff's renewal was approved upon receipt of the documents before hearing, the Board defendants were never involved."  (Defs' Reply Br. at 3)  However, the Amended Complaint recites Defendant Mattson's submission to the

---

The specific and non-conclusory nature of the allegations merit further development through discovery.

[8] The Amended Complaint named then DPS Commissioner James M. Thomas, in his official capacity, as a Defendant.  Since the Amended Complaint was filed, the Commissioner's position has changed twice so that the current Commissioner is Rueban F. Bradford.  "While Kuck has received his renewal permit in the interim, which moots any personal injunctive relief, he has also sued for damages and on behalf of a putative class of plaintiffs who may still be awaiting hearings before the Board."  Kuck v. Danaher, 600 F.3d at 168.  The claim against the Commissioner in his official capacity remains in behalf of the putative class of individuals still awaiting hearings who may benefit from injunctive relief.

5

Board and the Board's decision after hearing on Kuck's appeal. The Amended Complaint states that a hearing occurred before the Board on October 9, 2008, and quotes the Board's written decision following the hearing. (Am. Compl. ¶¶61-62)[9] The state informs this Court that a hearing never occurred.

Kuck waited from April 17, 2007, until October 9, 2008, for a hearing before the Board. The Second Circuit was aware of Kuck's basis for appeal to the Board. It did not find that the merit of Kuck's appeal determined the amount of process due. Due process is a function of the right deprived not of the reason for the deprivation. Simply because the state does not agree with Kuck does not mean that the state may deny Kuck due process in the form of a timely and meaningful opportunity for hearing.

IV. **The Possession of a Valid State Permit Constituted Proof on March 19, 2007, that Kuck was a Citizen or Legal Resident**

Kuck submitted an application for renewal of his state permit to carry a pistol or revolver ("state permit") on or about March 19, 2007. (Am. Compl. ¶ 38) A condition for the renewal of a state permit is that the applicant already possesses a valid state permit. Conn. Gen. Stat. § 29-30. Kuck possessed a valid state permit on March 19, 2007. (Am. Compl. ¶ 38) He possessed a valid state permit on March 19, 2007, based upon his submission of a valid birth certificate at

---

[9] The DPS Defendants never alleged that Kuck was ineligible as an alien illegally or unlawfully in the United States for renewal of his state permit. In justifying the denial of Kuck's renewal application, Defendant Mattson informed the Board of Firearms Permit Examiners: "App refused to produce to Connecticut State Police his birth certificate, United States passport or voters [sic] registration card upon renewal of his permit." (Am. Compl. ¶ 61) The Board then found "no other evidence of the appellant's unsuitability other than his failure to furnish proof of citizenship at the time of renewal." (Am. Compl. ¶ 62(c)). Cf. Defs' Reply Br. at 3 ("However, renewal of Plaintiff's permit was not because of lack of suitability.").

the time of his initial application for a state permit in 1982.  (Am. Compl. ¶ 43)  Every five years thereafter Kuck applied for renewal of his state permit without request for proof of citizenship or legal residency.  (Am. Compl. ¶ 44)

An individual who is "an alien illegally or unlawfully in the United States" is ineligible to hold a state permit.  Conn. Gen. Stat. § 29-28(b)(9).  The occurrence of any event rendering a state permit holder ineligible warrants revocation of the state permit.  Conn. Gen. Stat. § 29-32(b).  A state permit holder whose status changes from a citizen or legal resident to an alien illegally or unlawfully in the United States is subject to mandatory revocation of the state permit based on his or her changed status from a citizen or legal resident to an alien illegally or unlawfully in the United States.  Conn. Gen. Stat. § 29-28(b)(9).

The DPS Defendants never sought to revoke Kuck's state permit between the time of his March 19, 2007, renewal application and the expiration of his valid state permit on April 17, 2007.  (Am.  Compl.  ¶¶ 37-54)  The DPS Defendants did not move to revoke Kuck's state permit from the date of his March 19, 2007, renewal application through the ninety (90) day statutory grace period following the April 17, 2007, expiration date of his state permit.  (Am. Compl. ¶¶ 52,54,61)  By allowing Kuck to keep his state permit and not revoking it, the DPS Defendants conceded that the state permit is proof of citizenship or legal residency because if an individual is not a citizen or legal resident then the individual cannot possess a valid state permit.

In summary:  Only citizens or legal residents may possess a valid state permit.  Kuck possessed a valid state permit on March 19, 2007, which the DPS

7

**Defendants never sought to revoke.  The DPS Defendants had proof of Kuck's citizenship or legal residency in 1982, and thereafter, and were satisfied with the proof as evidenced by the failure to move for immediate revocation of Kuck's state permit as required by law when an individual is an alien illegally or unlawfully in the United States.  See Kuck v. Danaher, 600 F.3d 159, 162 n. 3 (2d 2010) ("In fact, Appellant claims that his previous possession of a valid firearm permit itself constituted proof of citizenship sufficient to satisfy the DPS requirement for renewals.").**

**The state argues in its Reply Brief that "[u]nder Plaintiff's logic, the Commissioner could not ask for proof of legal age before issuing a state permit." (Defs' Reply Br. at 3)  This is not what Kuck has argued.  Kuck submitted proof of citizenship at the time of his initial application for a state permit in 1982.  He submitted proof of his age at the time of his initial application for a state permit. Kuck has not argued that the submission of proof of age and citizenship or legal residency as a requirement of an <u>initial</u> state permit application is unwarranted.  However, he has argued that at the time of each five-year renewal following the initial state permit issuance, the DPS Defendants no more needed additional proof that Kuck was over the age of twenty-one (21) years than they needed additional proof, other than his valid state permit, that he was a United States citizenship.  Both his age and citizenship were proved in 1982.**

V.      <u>Conclusion</u>

For the foregoing reasons and those reasons set forth in Plaintiff's opposition memorandum, the Plaintiff respectfully asks that the Court deny the Defendants' Motion to Dismiss in its entirety.

In accordance with Local Civil Rule 7(a)(1), Kuck asserts that each of the three (3) counts in his two-hundred and forty-five (245) paragraph Amended Complaint is sufficiently pleaded for the Court to deny the motion.

The opposition memorandum and sur-reply brief supplement but do not diminish the sufficiency of the Amended Complaint.

                          **PLAINTIFFS**
                          **M. PETER KUCK, individually**
                          **and on behalf of others similarly situated**

BY:     /s/ Rachel M. Baird
            **Rachel M. Baird**
            **(ct12131)**
            **Law Offices of Rachel M. Baird**
            **379 Prospect Street**
            **Torrington CT 06790-5238**
            **Tel:  (860) 626-9991**
            **Fax:  (860) 626-9992**
            **Email:  rbaird@rachelbairdlaw.com**

## CERTIFICATION OF SERVICE

I HEREBY CERTIFY THAT on April 20, 2011, a copy of the foregoing Sur-reply Brief was filed electronically. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Rachel M. Baird
Rachel M. Baird
Commissioner of the Superior Court

## Kuck v. Danaher
### Amended Complaint Analysis

|  |  | State/Thomas | DPS Defendants[1] | Danaher | Fox | Masek | Mattson | Karanda | Bastura | Mazzoccoli | Adams | Rell |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Count One | 2nd, 14th Suitability; Denial of Right to Bear Arms (¶¶205-221) Against DPS Defendants | ¶¶108, 110 | ¶¶62(c),70, 104-106, 108,140 | ¶¶49,74, 78,113, 115 | ¶¶113, 114, 117 | ¶¶53-55 | ¶¶61, 62(c), 70,128, 188,194 | ¶¶188,194 | ¶¶40-42,50 | ¶¶95-96, 124,131,133, 136, 140,148,155, 160, 163-164, 176-177,194, 196-198 | ¶¶95-96,125, 131, 136, 140, 148, 153, 156, 160, 163-164, 176-177, 196-198 | ¶¶81-82 |
| Count Two | 2nd, 5th, 14th PDP; Denial of Timely Hearing (¶¶222-235) Against All Defendants | ¶¶108, 110 | ¶¶62(c),70, 83-88, 104-106, 108, 140 | ¶¶49,74, 78,113, 115 | ¶¶113, 114, 117 | ¶¶53-55 | ¶¶61, 62(c), 70,128, 188,194 | ¶¶188,194 | ¶¶40-42,50 | ¶¶95-96, 124,131,133, 136, 140,148,155, 160, 163-164, 176-177,194, 196-198 | ¶¶95-96,125, 131, 136, 140, 148, 153, 156, 160, 163-164, 176-177, 196-198 | ¶¶81-82 |
| Count Three | 2nd, 5th, 14th SDP; Arbitrary Barriers to Right to Carry (¶¶236-245) Against All Defendants) | ¶¶108, 110 | ¶¶62(c),70, 104-106, 108, 140 | ¶¶49,74, 78,113, 115 | ¶¶113, 114, 117 | ¶¶53-55 | ¶¶61, 62(c), 70,128, 188,194 | ¶¶188,194 | ¶¶40-42,50 | ¶¶95-96, 124,131,133, 136, 140,148,155, 160, 163-164, 176-177,194, 196-198 | ¶¶95-96,125, 131, 136, 140, 148, 153, 156, 160, 163-164, 176-177, 196-198 | ¶¶81-82 |
| General |  | ¶¶11 | ¶¶24 | ¶¶10,18 | ¶¶19 | ¶¶20 | ¶¶21 | ¶¶22 | ¶¶23, | ¶¶33,35 | ¶¶25, | ¶¶12- |

[1] **Includes the state of Connecticut (Commissioner Thomas), Danaher, Fox, Masek, Mattson, Karanda, and Bastura.**

**Appendix**